# United States Court of Appeals
# for the First Circuit

---

U.S. SECURITIES and EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

v.

GREGORY LEMELSON, a/k/a REV. FR. EMMANUEL LEMELSON,
and LEMELSON CAPITAL MANAGEMENT, LLC,

*Defendants-Appellants,*

and

THE AMVONA FUND, LP,

*Relief Defendant.*

---

On Appeal from the United States District Court for the District of
Massachusetts, Case No. 1:18-cv-11926-PBS (Hon. Patti B. Saris)

---

## APPELLANTS' OPENING BRIEF

Douglas S. Brooks (Bar No. 50021)
LIBBY HOOPES BROOKS & MULVEY, P.C.
260 Franklin Street
Boston, MA 02110
(617) 338-9300
dbrooks@lhbmlegal.com

Russell G. Ryan (Bar No. 124655)
Andreia Trifoi (Bar No. 1214670)
John J. Vecchione (Bar No. 1177417)
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
russ.ryan@ncla.legal

*Counsel for Appellants*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1, Appellant Lemelson Capital Management, LLC is a limited liability company with no parent corporation, and no publicly held corporation holds 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS............................................................................... ii

TABLE OF AUTHORITIES ......................................................................... iii

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD.......................... vi

JURISDICTIONAL STATEMENT .................................................................1

STATEMENT OF THE ISSUES......................................................................1

STATEMENT OF THE CASE .......................................................................2

SUMMARY OF THE ARGUMENT ................................................................11

ARGUMENT ............................................................................................12

   I.    STANDARD OF REVIEW ..............................................................12

   II.   SEC'S POST-TRIAL SANCTIONS DEMAND WAS EXCESSIVE AND UNREASONABLE .......................................................................13

      A.   EAJA's Excessive Demands Protection Is Not Limited to Initial Agency Demands Made "at the Onset of the Case"..............................13

      B.   SEC's Post-Trial Sanctions Demand Substantially Exceeded the Final Judgment and Was Unreasonable .................................................17

   III.  SEC ALSO MADE EXCESSIVE DEMANDS AT THE ONSET OF THE CASE.........20

CONCLUSION ..........................................................................................27

CERTIFICATE OF COMPLIANCE................................................................28

CERTIFICATE OF SERVICE .......................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Axon Enter., Inc. v. FTC* and *SEC v. Cochran*,
  598 U.S. 175 (2023) ..................................................................................17

*CFTC v. Walczak*,
  Nos. 20-cv-75 and 20-cv-76, 2024 WL 4800026 (W.D. Wis. Nov. 15, 2024) ...15

*Hernandez-Miranda v. Empresas Diaz Masso, Inc.*,
  651 F.3d 167 (1st Cir. 2011) ....................................................................13

*Ibrahim v. U.S. Dep't of Homeland Sec.*,
  912 F.3d 1147 (9th Cir. 2019) ..................................................................13

*Kokesh v. SEC*,
  581 U.S. 455 (2017) ................................................................................24

*Lemelson v. SEC*,
  144 S. Ct. 486 (2023) ................................................................................9

*Liu v. SEC*,
  591 U.S. 71 (2020) ..................................................................................24

*McDonald v. Sec'y of Health & Hum. Servs.*,
  884 F.2d 1468 (1st Cir. 1989) ..................................................................12

*McLaughlin v. Hagel*,
  767 F.3d 113 (1st Cir. 2014) ....................................................................13

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ......................................................................... 22, 23

*Park Manor, Ltd. v. U.S. Dep't of Health & Hum. Servs.*,
  495 F.3d 433 (7th Cir. 2007) ....................................................................13

*Scarborough v. Principi*,
  541 U.S. 401 (2004) ..................................................................................3

*Schock v. FDIC*,
  118 F. Supp. 2d 165 (D.R.I. 2000) ..............................................................3

*SEC v. Berlacher*,
  No. 07-3800, 2012 WL 512201 (E.D. Pa. Feb 15, 2012) ........................... 15, 25

*SEC v. Commonwealth Equity Servs.*, LLC,
  1:19-cv-11655, 2024 WL 1375970 (D. Mass. Mar. 29, 2024) ..........................15

iii

*SEC v. Findley*,
No. 3:20-cv-0397, 2024 WL 707264 (D. Conn. Feb. 21, 2024) ........................15

*SEC v. Lemelson*,
57 F.4th 17 (1st Cir. 2023).................................................................................9

*SEC v. Panuwat*,
No. 21-cv-6322, 2024 WL 4602708 (N.D. Cal. Sept. 9, 2024).........................15

*Spencer v. N.L.R.B.*,
712 F.2d 539 (D.C. Cir. 1983) ........................................................................3, 4

*United States v. One 1997 Toyota Land Cruiser*,
248 F.3d 899 (9th Cir. 2001).........................................................................6, 14

**Statutes**

15 U.S.C. § 78u(d)(3)(B)(iii) ................................................................................21

15 U.S.C. § 80b-9(e)(2)(C) ...................................................................................21

28 U.S.C. § 1291 .....................................................................................................1

28 U.S.C. § 2412 ............................................................................. 2, 5, 16, 18, 26

5 U.S.C. § 504 .........................................................................................................3

Pub. L. 104–121, Title II, § 203(7), 110 Stat. 858 (1996) .....................................5

Pub. L. 104–121, Title II, § 232, 110 Stat. 863 (1996)...........................................4

Pub. L. 96–481, Title II, 94 Stat. 2325 (1980).....................................................2, 3

**Rules**

Fed. R. Civ. P. 68 ............................................................................................ 13, 14

**Other Authorities**

142 Cong. Rec. E571-01 (1996) (summary submitted by Rep. Hyde) ...............6, 22

142 Cong. Rec. H2984 (daily ed. Mar. 28, 1996)..................................................23

Audrey Strauss,
*'Smyth' Decision Faults SEC's Use of Injunctions*, N.Y.L.J., Nov. 3, 2005 ......23

Brian Korpics, Jay Austin, & Bruce Myers,
*Shifting the Debate: In Defense of the Equal Access to Justice Act*, 43 Env't
L. Rep. News & Analysis 10985 (2013) ............................................................4

Dorothy Heil,
*'Obey the Law' Injunctions Questioned in Some Courts*, N.Y.L.J.,
July 1, 2010 ......................................................................................................23

*In re Clarence Z. Wurts*,
   76 S.E.C. Docket No. 492 (Oct. 31, 2001) ..........................................................15

Judith E. Kramer,
   *Equal Access to Justice Act Amendments of 1996:  A New Avenue for
   Recovering Fees From the Government*, 51 ADMIN. L. REV. 363 (1999) .......5, 22

Luis A. Aguilar,
   *Remarks Before the 20th Annual Securities and Regulatory Enforcement
   Seminar* (Oct. 25, 2013) ......................................................................................17

Urska Velikonja,
   *Are the SEC's Administrative Law Judges Biased? An Empirical
   Investigation*, 92 WASH. L. REV. 315 (2017) ......................................................17

**REASONS WHY ORAL ARGUMENT SHOULD BE HEARD**

Pursuant to Local Rule 34.0(a), Appellants respectfully request that the Court schedule oral argument in this case. This appeal raises important issues of first impression in this circuit regarding the proper interpretation of the "excessive demands" provision of the Equal Access to Justice Act, including whether, as the district court held, that provision protects private litigants only when an agency makes an excessive demand in its initial complaint, and not when it makes such a demand at some later point during the litigation. Oral argument is likely to assist the Court in addressing those issues.

## JURISDICTIONAL STATEMENT

Appellee Securities and Exchange Commission ("SEC"), the plaintiff below, asserted jurisdiction in the district court under Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa; Sections 209(d), 209(e) and 214 of the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-9(d), 80b-9(e), and 80b-14; and 28 U.S.C. § 1331. After an unsuccessful appeal to this Court and an unsuccessful petition for certiorari, Appellants Rev. Fr. Emmanuel Lemelson and his wholly owned firm, Lemelson Capital Management, LLC (jointly referred to herein at "Lemelson"), the defendants below, filed a timely motion in the district court for costs and attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"). The district court issued a memorandum and order denying Lemelson's EAJA motion on July 23, 2024, and Lemelson filed a timely notice of appeal from that order on August 13, 2024.

This Court has jurisdiction under 28 U.S.C. §1291 because the district court's order denying Lemelson's post-judgment EAJA motion is a final order that disposed of the only remaining issue in the case.

## STATEMENT OF THE ISSUES

1.  Does the "excessive demands" provision of EAJA apply only to initial agency demands made "at the onset of the case"—*i.e.*, in the complaint or before

filing of the complaint—such that subsequent agency demands at the remedies stage or otherwise, however excessive, are categorically immune from EAJA scrutiny?

2. Does an agency complaint that alleges a specific dollar amount of "illegal profits" and demands as relief a final judgment ordering the defendants "to disgorge the proceeds [of] their ill-gotten gains, plus prejudgment interest," constitute a "demand" for purposes of EAJA?

3. Were SEC's repeated demands for a permanent lifetime injunction and well over a million dollars in total penalties, disgorgement, and prejudgment interest excessive and unreasonable in light of the district court's final judgment awarding SEC only a five-year injunction, only $160,000 in penalties, zero disgorgement, and zero interest?

## STATEMENT OF THE CASE

### A. Relevant Statutory Provision

With strong bipartisan majorities in both houses, Congress enacted EAJA in 1980 as one of several amendments to the Small Business Act. *See* Pub. L. 96–481, Title II, 94 Stat. 2325 (1980), *codified in relevant part at* 28 U.S.C. § 2412(d). In its original iteration, which remains largely intact today, EAJA mandated an award of costs, fees, and expenses to a "prevailing party" in any civil action (except tort cases) brought by or against the United States unless the court found that "the position of the United States was substantially justified or that special circumstances

make an award unjust." *Id*. § 204(a).[1]  The express purpose of law was "to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees, expert witness fees, and other costs against the United States." *Id*. § 202(c); *accord Scarborough v. Principi*, 541 U.S. 401, 406 (2004) (Congress enacted EAJA "to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government" (quoting H.R. Rep. No. 96–1005, p. 9)); *Schock v. FDIC*, 118 F. Supp. 2d 165, 168 (D.R.I. 2000), *aff'd sub nom. Schock v. United States*, 254 F.3d 1 (1st Cir. 2001).

Congress had three general goals when enacting EAJA.  First, it sought to provide a mechanism by which victims of abusive government action could vindicate federal rights without incurring large litigation expenses.  *See Spencer v. N.L.R.B.*, 712 F.2d 539, 550 (D.C. Cir. 1983).  Second, it believed that exposing government agencies to liability under EAJA would reduce the incidence and frequency of such abuse.  *See id.*  Third, it hoped to "refine the administration of federal law—to foster greater precision, efficiency and fairness in the interpretation of statutes and in the formulation and enforcement of governmental regulations."

---

[1] EAJA includes parallel fee-shifting provisions for administrative adjudications, but those provisions are not applicable in this case.  *See* 5 U.S.C. § 504.

*Id.*; *see also* Brian Korpics, Jay Austin, & Bruce Myers, *Shifting the Debate: In Defense of the Equal Access to Justice Act*, 43 ENV'T L. REP. NEWS & ANALYSIS 10985, 10987 (2013).

EAJA is thus especially significant in the context of administrative public interest litigation. It ensures that citizens are equipped with the tools to challenge unreasonable agency action that encroaches on their federally protected rights. Korpics, *et al.*, *supra* at 10986. It creates a mechanism by which parties whose rights have been violated can be made whole. *Id.* And it gives agencies a clear financial incentive to obey the law. *Id.*

Of most relevance here, Congress amended EAJA in 1996 as part of the Contract with America Advancement Act. *See* Pub. L. 104–121, Title II, § 232, 110 Stat. 863 (1996). Title II of that Act, which in turn was called the Small Business Regulatory Enforcement Fairness Act, added new protection against excessive agency demands even where an agency otherwise prevails in a case that was substantially justified. The express purpose of this new "excessive demands" provision was "to make Federal regulators more accountable for their enforcement actions by providing small entities with a meaningful opportunity for redress of excessive enforcement activities." Pub. L. 104–121, Title II, § 203(7), 110 Stat. 858

(1996). Like the original EAJA, this added protection passed Congress with overwhelming bipartisan support.[2]

In its current form, the relevant text provides:

> If, in a civil action brought by the United States … the demand by the United States is substantially in excess of the judgment finally obtained by the United States and is unreasonable when compared with such judgment, under the facts and circumstances of the case, the court shall award to the party the fees and other expenses related to defending against the excessive demand, unless the party has committed a willful violation of law or otherwise acted in bad faith, or special circumstances make an award unjust. Fees and expenses awarded under this subparagraph shall be paid only as a consequence of appropriations provided in advance.

28 U.S.C. § 2412(d)(1)(D). A nearby provision defines "demand" as "the express demand of the United States which led to the adversary adjudication, but shall not include a recitation of the maximum statutory penalty (i) in the complaint, or (ii) elsewhere when accompanied by an express demand for a lesser amount." *Id.* § 2412(d)(2)(I).

The excessive demands provision was enacted to force government agencies to make reasonable efforts to match their sanctions demands to the circumstances of a given case, instead of consistently resorting to the "high end of the scale" when demanding penalties against the targets of their enforcement actions. *See United*

---

[22] The vote in the Republican-controlled house was 328 to 91, and the vote in the Republican-controlled Senate was unanimous. *See* Judith E. Kramer, *Equal Access to Justice Act Amendments of 1996: A New Avenue for Recovering Fees From the Government*, 51 ADMIN. L. REV. 363, 376 (1999).

*States v. One 1997 Toyota Land Cruiser*, 248 F.3d 899, 904 (9th Cir. 2001) (quoting 142 Cong. Rec. E571-01, E573 (1996) (statement of Rep. Hyde)). The provision is designed to ensure that agencies make a reasonable effort to impose penalties that correspond to the actual value or severity of the case. *Id.* Moreover, it was intended to force agency attorneys, who are backed by the vast power and resources of the federal government, to refrain from routinely issuing demands at the highest end of the scale in order to pressure individuals and small businesses into accepting excessive settlements. *See* 142 Cong. Rec. E571-01, E573 (1996) (summary submitted by Rep. Hyde).

**B.      SEC's Prosecution and Demands Against Lemelson**

Lemelson is an ordained Greek Orthodox priest, activist investor, social commentator, and former entrepreneur. He sometimes also becomes a transparent whistleblower and short seller when his extensive research identifies publicly traded corporations he perceives as corrupt, mismanaged, and/or overvalued. In September 2018, after a four-year SEC investigation instigated by Ligand Pharmaceuticals, Inc. (one of the companies Lemelson had publicly exposed in 2014 and submitted whistleblower complaints against), SEC filed an unprecedented complaint in the district court alleging that Lemelson engaged in a "fraudulent" scheme to "manipulate" Ligand's stock price as well as a "scheme to defraud" both Ligand investors and

Lemelson's own investors. JA0034.[3] After the district court partially granted Lemelson's motion to dismiss the complaint, SEC filed an amended complaint in March 2019. JA0062.[4]

In both its original and amended complaints, SEC also alleged that Lemelson's trading in Ligand "generat[ed] approximately $1.3 million in illegal profits." JA0037, 0044, 0065, 0072. The complaints then demanded a final judgment that would order Lemelson and the fund he managed "to disgorge the proceeds [of] their ill-gotten gains, plus prejudgment interest." JA0053, 0082. The complaints further demanded that Lemelson and his fund be "permanently enjoined and restrained" from violating certain statutes and rules and ordered to pay certain unspecified civil monetary penalties. JA0053, 0082.

The case was tried before a jury in the fall of 2021, and the jury returned a verdict finding that, among Lemelson's five written reports that criticized Ligand during the relevant period (totaling 56 pages), and four online oral interviews concerning Ligand (totaling more than an hour of airtime), only

---

[3] Citations to the Joint Appendix are in the form "JA_____."

[4] SEC's case was unprecedented because, among other things, unlike other short sellers the agency had previously charged in connection with alleged "short-and-distort schemes," Lemelson transparently published his reports under his own name, publicly disclosed his short position, cited to the public filings that were the sources of his conclusions, and held on to his short position for months.

three of his sentences or sentence fragments contained any untrue statement or omission of material fact. JA0116-17. The jury rejected each of SEC's claims that Lemelson had engaged in a fraudulent or manipulative scheme, that Lemelson had engaged in any misconduct against his own investors, and that Lemelson's statements warning about Ligand's insolvency had contained untrue statements or omissions of material fact. *Id.*

On December 22, 2021, after the district court denied Lemelson's post-trial motion for judgment as a matter of law, SEC filed a motion for entry of final judgment. JA0119. Despite the jury's rejection of most of SEC claims, including the most serious ones alleging manipulation and fraudulent schemes, SEC's motion again demanded "permanent" lifetime injunctions and nearly $2.3 million in total monetary sanctions against Lemelson. Specifically, in addition to permanent injunctions, SEC demanded a $656,500 civil penalty against Lemelson individually; a $775,000 civil penalty against his investment management company; and $656,500 in joint and several disgorgement against Lemelson and his company, plus $208,624 in prejudgment interest. JA0119, 0121-22, 0140.

The district court entered final judgment and an accompanying memorandum order on March 30, 2022. JA0142, 0166. The final judgment enjoined Lemelson for only five years, imposed only a $160,000 civil penalty

against Lemelson individually, imposed no penalty against his company, and awarded SEC no disgorgement and no prejudgment interest. JA0166.

Lemelson appealed. SEC did not cross-appeal. This Court affirmed, *SEC v. Lemelson*, 57 F.4th 17 (1st Cir. 2023), and then denied rehearing. Order Den. Reh'g En Banc, *SEC v. Lemelson*, No. 22-1630 (1st Cir. Mar. 6, 2023). Lemelson petitioned the Supreme Court for a writ of certiorari, and the Court denied the petition in December 2023. *Lemelson v. SEC*, 144 S. Ct. 486 (2023).

## C.  Lemelson's EAJA Application

After the Supreme Court denied his petition for a writ of certiorari, Lemelson filed a timely motion in the district court for an award of costs and attorneys' fees under EAJA, asserting two alternative theories. ECF Dkt. Nos. 305–309. First, he argued that he was a "prevailing party" in the case within the meaning of EAJA and that SEC's position in the litigation was not "substantially justified." ECF Dkt. No. 306 at 5–16 (citing 28 U.S.C. § 2412(d)(1)(A)). Second, he argued that, irrespective of whether he was a prevailing party or whether SEC's position was substantially justified, SEC's monetary and other demands in the case—both in its complaints and in its post-trial motion for entry of final judgment—were "substantially in excess"

of the relief the district court ultimately awarded. *Id*. at 16–18 (citing 28 U.S.C. §2412(d)(1)(D)).

The district court denied Lemelson's EAJA motion in a memorandum and order dated July 23, 2024. JA0170. With respect to Lemelson's first argument, the court agreed that Lemelson was a prevailing party in the case but held that SEC's position was substantially justified. JA0174-75.

With respect to Lemelson's second argument, the court expressly acknowledged "the large disparity between the SEC's post-verdict demand and the final judgment obtained by the government." JA0178. The court nevertheless determined, without extensive analysis, that EAJA's excessive demands provision is categorically inapplicable to post-trial agency demands made at the remedies stage of litigation because, in the court's view, that provision applies only to *initial* demands made "at the onset of the case." *Id*. The court further held that SEC's complaints did not include any express "demand" as defined by EAJA. JA0176–77. With specific regard to their demand for $1.3 million in disgorgement of ill-gotten gains, the court held that even if that demand was an express demand for $1.3 million, it fell within a statutory safe harbor for mere "recitation of the statutory maximum penalty." JA0177 (quoting 28 U.S.C. § 2412(d)(2)(I)). The court did not address the excessiveness of SEC's express demand for "permanent" lifetime injunctions.

Lemelson filed a timely notice of appeal on August 13, 2024. ECF Dkt.

No. 318.[5]

## SUMMARY OF THE ARGUMENT

At issue in this appeal is whether the "excessive demands" provision of EAJA applies when a federal agency, after losing on most of its claims at trial (including its most serious charges), nonetheless demands as punishment a lifetime injunction and more than $2 million in combined disgorgement, interest, and civil monetary penalties, but the district court ultimately awards the agency only a five-year injunction, *no* disgorgement, *no* interest, and only a $160,000 civil penalty. Also at issue is whether the excessive demands provision applies when the agency's initial complaint similarly demanded a permanent, lifetime injunction, $1.3 million in disgorgement, unspecified prejudgment interest, and unspecified civil monetary penalties, but the district court, as noted, ultimately awards the agency only a five-year injunction, *no* disgorgement, *no* interest, and only a $160,000 civil penalty.

In denying Lemelson's application for costs and fees under EAJA, the district court erred in at least three respects. First, it grafted onto the "excessive demands" provision an arbitrary and atextual caveat that would, if sustained, limit the

---

[5] While Lemelson disagrees with the district court's conclusion that SEC's position in the litigation was "substantially justified" within the meaning of EAJA, this appeal challenges only the district court's rulings with respect to the excessive demands provision of EAJA.

provision's reach to *initial* agency demands made at the "onset" of a case, effectively immunizing subsequent agency demands—however excessive and abusive—made later in the litigation, such as at the post-trial remedies stage that is a common feature of agency enforcement cases. Second, the court held that a $1.3 million disgorgement demand in the agency's initial complaint was not an "express demand" within the meaning of EAJA, and that in any event it fell within a statutory safe harbor for the mere "recitation of the maximum statutory penalty." Third, the court did not address the excessiveness of SEC's repeated demands for a permanent lifetime injunction against Lemelson. All three errors warrant reversal and remand. If allowed to stand, they would give federal agencies an expedient roadmap for immunizing themselves from liability and accountability under the excessive demands provision simply by, among other tactics, making sure not to quantify a specific dollar-amount demand in their original complaints, thereby effectively rendering this critical statutory protection impotent.

## ARGUMENT

### I. STANDARD OF REVIEW

A district court's decision to award or deny attorney's fees is reviewed under an abuse of discretion standard. *See McDonald v. Sec'y of Health & Hum. Servs.*, 884 F.2d 1468, 1474 (1st Cir. 1989). Statutory interpretation of EAJA, however, is a question of law and reviewed *de novo*. *See McLaughlin v. Hagel*, 767 F.3d 113,

117 (1st Cir. 2014); *see also Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167, 170 (1st Cir. 2011); *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1166 (9th Cir. 2019) (en banc), *cert. denied sub nom. Dep't of Homeland Sec. v. Ibrahim*, 140 S. Ct. 424 (2019).

## II.   SEC'S POST-TRIAL SANCTIONS DEMAND WAS EXCESSIVE AND UNREASONABLE

### A. EAJA's Excessive Demands Protection Is Not Limited to Initial Agency Demands Made "at the Onset of the Case"

As the Seventh Circuit has observed, EAJA's excessive demands provision operates in parallel with Rule 68 of the Federal Rules of Civil Procedure and serves a similar purpose. *Park Manor, Ltd. v. U.S. Dep't of Health & Hum. Servs.*, 495 F.3d 433, 437 (7th Cir. 2007).  Rule 68 allows a defendant to serve an "offer of judgment" on a plaintiff which, if not accepted, requires the plaintiff to pay the defendant's subsequently incurred litigation costs if the plaintiff ultimately recovers less than the amount offered, thereby "penaliz[ing] the greedy winning plaintiff." *Id.*; *see also* Fed. R. Civ. P. 68.  When an agency makes excessive monetary and other demands during a litigated enforcement proceeding, its greed similarly "forces the party against which it is proceeding to incur an excessive expense to defend itself," *Park Manor*, 495 F.3d at 437, and thus it should be held similarly accountable through EAJA.  Notably, offers under Rule 68 need not be served before or immediately after the filing of the complaint; they can be served throughout the

ensuing litigation—even at the remedies stage after liability has already been determined at trial.  *See* Fed. R. Civ. P. 68(c).

By contrast, despite acknowledging the "large disparity" between SEC's post-trial demand and the final judgment, the district court ruled that SEC's post-trial demand against Lemelson was categorically immune from EAJA scrutiny because, in the court's view, "a post-verdict demand is not an 'express demand of the United States which led to the adversary adjudication' at the onset of the case."  JA0178 (citing the statutory definition of "demand" and *One 1997 Toyota Land Cruiser*, 248 F.3d at 905).  Relying on inapposite dictum from an out-of-circuit case, the court grafted onto the statutory definition of the term "demand" an arbitrary and unprecedented caveat that only *initial* demands made "at the onset of the case" qualify.  *Id.*[6]  But that severe limitation is found nowhere in the statutory text and would completely undermine the purpose of the statute.

---

[6] In *One Toyota Land Cruiser*, which found the government's demand excessive and awarded fees, the Ninth Circuit invoked the vernacular of "initial" demands only to refute the government's dubious argument that fees were inappropriate because, notwithstanding the excessive demand it had made in its complaint (and adhered through an unsuccessful summary judgment motion), its *final* settlement demand was accepted by the plaintiff and thus was no greater than the amount in the court's judgment approving the settlement.  248 F.3d at 905.  That dictum—which did nothing more than refute the government's contention that its excessive initial demand was necessarily sanitized, *nunc pro tunc*, by its final settlement demand— is wholly inapposite here.

There is no textual or logical basis for limiting this important protection only to initial demands made "at the onset of the case," as the district court held. Instead, the court's inquiry should focus on the disparity between the government's demand for injunctive and monetary relief taken in its entirety, regardless of when made, and the final disposition of the case. *See*, *e.g.*, *SEC v. Berlacher*, No. 07-3800, 2012 WL 512201, at *6 (E.D. Pa. Feb 15, 2012) (citing 142 Cong. Rec. S3244 (daily ed. March 29, 1996) while entertaining claim that SEC post-trial demand was excessive); *In re Clarence Z. Wurts*, 76 S.E.C. Docket No. 492 (Oct. 31, 2001) (entertaining excessive demands claim based on explicit demand first made in SEC prosecutors' pre-hearing brief).

Indeed, this protection is *especially* critical at the remedies stage of a case, after the extent of a defendant's liability is already determined, because the agency is then ideally situated to make a reasonable and realistic demand that comports with what the court or jury has decided on liability—one that might even avoid or minimize the need for further contested litigation. Bifurcating the determination of liability from the determination of appropriate sanctions, as happened here, is commonplace in agency enforcement litigation.[7] And in every practical and

---

[7] For just a few recent examples, *see CFTC v. Walczak*, Nos. 20-cv-75 and 20-cv-76, 2024 WL 4800026 (W.D. Wis. Nov. 15, 2024); *SEC v. Panuwat*, No. 21-cv-6322, 2024 WL 4602708 (N.D. Cal. Sept. 9, 2024); *SEC v. Commonwealth Equity Servs.*, LLC, 1:19-cv-11655, 2024 WL 1375970 (D. Mass. Mar. 29, 2024); *SEC v. Findley*, No. 3:20-cv-0397, 2024 WL 707264 (D. Conn. Feb. 21, 2024).

meaningful sense, the agency's more informed demand at the remedies stage "[leads] to the adversary adjudication" of proper sanctions no less than any demand the agency made in its initial complaint. 28 U.S.C. § 2412(d)(2)(I). In Lemelson's case, for example, after the jury rejected the bulk of SEC's charges (including its most serious charges), SEC was ideally positioned to make a sober, realistic demand for proportionate sanctions in light of the jury's reality check. Instead, SEC doubled down on its unreasonable initial demands, again insisting that the Court order a permanent lifetime injunction and more than $2 million in disgorgement, interest, and penalties, as if the jury verdict never happened. This is *exactly* the type of abusive inflexibility EAJA was designed to prevent and deter—*especially* when made at the remedies stage rather than years earlier "at the onset of the case."

The district court's restrictive, atextual interpretation of EAJA would severely undermine the express purpose and utility of the statute's protection against excessive agency demands. If allowed to stand, the decision would provide a roadmap for agencies to immunize themselves from EAJA liability through the simple expedient of not including any specific dollar demand in their initial complaints, instead waiting to unveil those demands only after the defendant has incurred months or years of litigation expense and its liability has already been established. By that point, the agency's already-overwhelming settlement leverage increases geometrically, because the agency no longer needs to worry about losing

on the question of liability, so the temptation to make an excessive demand to induce settlement reaches its apex. It is at precisely this point in the litigation that the vulnerable defendant is in the most dire need of EAJA's protection against excessive agency demands.[8]

The district court's artificially restrictive and unprecedented reading of the statutory term "demand" should be reversed.

## B. SEC's Post-Trial Sanctions Demand Substantially Exceeded the Final Judgment and Was Unreasonable

The district court expressly acknowledged "the large disparity between the SEC's post-verdict demand and the final judgment," JA0178, but did not reach the question of whether that demand was "substantially in excess of the judgment finally

---

[8] SEC's overwhelming leverage in enforcement actions results in very few of its cases being litigated to the end, resulting in relatively few opportunities for federal courts—especially appellate courts—to interpret and shape the applicable law; by most estimates, SEC settles the vast majority of its cases. *See* Urska Velikonja, *Are the SEC's Administrative Law Judges Biased? An Empirical Investigation*, 92 WASH. L. REV. 315, 340, 346–53 (2017) ("Only a small minority of [SEC] enforcement actions are contested to the end and ultimately decided by a dispositive motion or after trial."); Luis A. Aguilar, *Remarks Before the 20th Annual Securities and Regulatory Enforcement Seminar* (Oct. 25, 2013), https://www.sec.gov/news/speech/2013-spch102513laa (last visited Oct. 15, 2024) (former SEC commissioner estimating that 98% settle). Justice Gorsuch recently highlighted that agencies like SEC are aware that few enforcement targets can "outlast or outspend" the federal government, and thus, agencies use this as "leverage to extract settlement terms they could not lawfully obtain any other way." *Axon Enter., Inc. v. FTC* and *SEC v. Cochran*, 598 U.S. 175, 216 (2023) (Gorsuch, J., concurring).

obtained" and "unreasonable when compared with such judgment," which would have entitled Lemelson to an award of costs and fees. 28 U.S.C. § 2412(d)(1)(D).[9] Had it reached that question, the answer would have been obvious: SEC's demand was, by any objective measure, both excessive and unreasonable.

Start with SEC's continued demand for a permanent, lifetime injunction. JA0119, 0121-22, 0140. Because such an injunction would forever restrain Lemelson from making untrue or misleading statements about publicly traded corporations, the demand was, for all practical purposes, a demand for a lifetime prior restraint on Lemelson's free speech rights. It would be predicated on the jury's finding that, in all of Lemelson's prolific written and oral commentary about Ligand more than seven years earlier, three sentences or sentence fragments contained an untruth or material omission. But that demand was exactly the same as the demand SEC made in its initial and amended complaints, which was predicated on allegations (ultimately unproven) that Lemelson had not only uttered those few

---

[9] For its part, SEC did not seriously deny this "large disparity." Instead, SEC primarily argued that its demand was not a demand for purposes of EAJA. *See* ECF Dkt. No. 312, at 18. SEC urged an interpretation of the term "demand" even more restrictive than what the district court adopted, whereby even explicit demands made *in the initial complaint* would not count as demands under EAJA. *Id*. SEC further suggested, even more absurdly, that an agency demand can never be deemed excessive under EAJA unless it also exceeds the absolute maximum possible sanctions the court could lawfully impose by interpreting the facts and law in a manner most favorably to the agency. *Id*. at 19. Unsurprisingly, the district court did not adopt these extreme and untenable positions.

errant sentences but also engaged in a massive fraudulent and manipulative scheme against not only the market but also his own investors. Despite the jury's rejection of every one of those far more serious allegations, SEC defiantly clung to its initial demand for the most severe and restrictive injunction possible. Unsurprisingly, the district court rebuffed this demand and enjoined Lemelson for only five years, realizing that the case against him was "not as severe" as others where courts have ordered permanent, lifetime injunctions. JA0151.[10]

Next, consider SEC's demand for more than $850,000 in disgorgement and prejudgment interest. JA0119, 0122, 0140. The district court again rebuffed SEC's demand, finding among other shortcomings that "SEC has not presented a reasonable approximation of the pecuniary gain" from the three statements faulted by the jury and that "SEC has not provided any evidence that it could identify victims." JA0164. As a result, the court awarded SEC *zero* disgorgement and *zero* interest rather than the $850,000 SEC unreasonably demanded. JA0165, 0166.

Finally, consider SEC's demand for outlandish additional monetary penalties of $656,500 against Lemelson individually and $775,000 against his firm, all predicated on the jury's verdict with respect to three isolated Lemelson sentences.

---

[10] During one colloquy with counsel outside the jury's presence eight days into the trail, the district court commented about SEC's theory alleging a fraudulent and manipulative scheme that "This is why I've always said this was an underdeveloped piece of your case." Trial Transcript (Day 8), ECF Dkt. No. 257, at 9 (filed Jan 7, 2022).

JA0119, 0122, 0140. Once again, the district court saw through SEC's excessive and unreasonable demand. The court found SEC's supporting evidence lacking and recognized SEC had "proposed a penalty based on an overarching scheme" which the jury had rejected, never recalibrating its penalty demand to comport with the small fraction of its original allegations that the jury ultimately credited. JA0160.

Whether viewed through its component parts or as a whole, SEC's post-trial demand was "substantially in excess" of the district court's final judgment and manifestly unreasonable in light of that judgment. Lemelson therefore was entitled, at a minimum, to recover his costs and fees incurred in defending against that excessive and unreasonable post-trial demand.

## III.  SEC ALSO MADE EXCESSIVE DEMANDS AT THE ONSET OF THE CASE

Even accepting the district court's view that only *initial* demands made "at the onset of the case" can be deemed excessive under EAJA, SEC plainly made such excessive demands in its initial complaint, and then repeated those demands, verbatim, in its amended complaint. Both complaints explicitly demanded that Lemelson be *permanently* enjoined from violating certain provisions of both the Exchange Act and the Advisers Act, JA0053, 0082, yet the final judgment imposed only a five-year injunction under the Exchange Act and *no* injunction under the Advisers Act. JA0166. Both complaints, fairly read, also demanded $1.3 million in disgorgement, *plus* prejudgment interest on that amount (which SEC later quantified

at over $200,000).  JA0053, 0082.  Yet the final judgment, as previously noted, awarded SEC *zero* disgorgement and *zero* interest because SEC could not provide even a "reasonable approximation" of wrongful pecuniary gain by Lemelson nor "any evidence that it could identify victims."  JA0164-65, 0166.

SEC's complaints also demanded monetary penalties against Lemelson individually and separately against his management company.  JA0053, 0082.  Although the complaints did not specify the dollar amount SEC would ultimately seek in penalties, both complaints ominously alleged that "Lemelson's conduct involved fraud, deceit, or deliberate or reckless disregard of regulatory requirements, and resulted in substantial loss, or significant risk of substantial loss, to other persons."  JA0038, 0066.  That allegation was not a mere recitation of the statutory maximum penalty available, but rather it tracked verbatim the statutory predicate required for imposing the most severe monetary penalties available under the federal securities laws, *see* 15 U.S.C. §§ 78u(d)(3)(B)(iii), 80b-9(e)(2)(C).  In the end, the final judgment assessed a penalty against Lemelson that was far below the maximum intimated by SEC's tracking of this statutory language, and it assessed no penalty at all against Lemelson's company.  JA0160, 0166.

Despite the foregoing, the district court concluded that SEC's complaints were devoid of any explicit demands within the meaning of EAJA.  JA0176-77.  The court erred in several respects.

First, the court entirely overlooked SEC's explicit demand in both complaints for the "drastic and extraordinary remedy" of a permanent, lifetime injunction against Lemelson. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Both complaints demanded a final judgment "permanently restraining and enjoining Defendants … from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8]." JA0053, 0082. Nothing in EAJA excludes demands for injunctions or other non-monetary relief from the protections of the excessive demands provision, and the legislative history confirms that such demands were not intended to be excluded.

For example, in his comprehensive summary of the 1996 EAJA amendments, the leading House sponsor of the excessive demands provision made clear that "[t]he comparison called for in [the provision] is always between a 'demand' by the government for *injunctive and* monetary relief taken as a whole and the final outcome of the case in terms of *injunctive and* monetary relief." 142 Cong. Rec. E573 (March 28, 1996) (summary submitted by Rep. Hyde) (emphasis added); *accord id*. (the comparison is between the demand and the final outcome, "whether a fine, injunctive relief or damages"); Kramer, *supra* at 383 ("If an agency seeks injunctive or other non-monetary relief which it does not ultimately obtain, its

demand for such relief may be adjudged excessive for EAJA purposes."). Indeed, SEC itself publicly conceded this point during the legislative process that led to the bipartisan enactment of the excessive demands provision. In opposing the legislation, SEC's then-Chairman submitted an analysis admitting that if Congress enacted the excessive demands provision, it "would significantly increase the exposure of the Commission to fee awards," in part because "the Commission frequently seeks to obtain and injunction" and "the court could find that a violation has occurred," but "might not award an injunction for other reasons," resulting in a final judgment that "may be 'disproportionately less favorable' to the Commission than the relief requested." 142 Cong. Rec. H2984 (daily ed. Mar. 28, 1996) (attachment to letter from SEC Chairman Arthur Levitt to Rep. Dingell, Mar. 27, 1996 (quoting language of then in Senate version of the legislation)).[11] By not even

---

[11] SEC significantly understated its well-known penchant for rotely demanding permanent injunctions in virtually every federal court complaint it has filed in recent decades, regardless of whether there is any plausible need for one. *See, e.g.*, Dorothy Heil, *'Obey the Law' Injunctions Questioned in Some Courts*, N.Y.L.J., July 1, 2010 (after 1939, "SEC began routinely asking courts to enter injunctions in litigated and settled cases, often when the allegedly fraudulent conduct had long ceased"); Audrey Strauss, *'Smyth' Decision Faults SEC's Use of Injunctions*, N.Y.L.J., Nov. 3, 2005 (over time, broad obey-the-law injunctions "became a non-negotiable position" of SEC). If nothing else, reversing the district court here might have the salutary effect of causing SEC to reevaluate its practice of routinely demanding what courts and other litigants recognize in virtually all other contexts as "a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto*, 561 U.S. at 165.

considering the excessiveness of SEC's repeated demands for a permanent, lifetime injunction, the district court committed reversible error.

The district court also erred in deeming SEC's $1.3 million disgorgement demand to fall within EAJA's exception for mere "recitation of the maximum statutory penalty." JA0136 (quoting 28 U.S.C. § 2412(d)(2)(I)). To begin, other than for the limited purposes of a legacy statute of limitations no longer applicable, *see Kokesh v. SEC*, 581 U.S. 455, 459 (2017), SEC disgorgement awards have historically been viewed as an equitable remedy and *not* a penalty—at least when properly limited to an alleged wrongdoer's net profits and awarded to any victims. *See, e.g., Liu v. SEC*, 591 U.S. 71, 79, 85–86 (2020). Moreover, the maximum disgorgement amount has never been codified by statute; the limits on disgorgement awards have historically been developed through case law, not statute. *See id.* at 85–86, 91. Thus, there was no "statutory maximum penalty" for SEC to recite when it demanded disgorgement. Finally, SEC's $1.3 million disgorgement demand was not phrased as a mere "recitation" of the maximum disgorgement amount the court could lawfully award—*e.g.*, something akin to "the Court may award disgorgement up to the full amount of defendants' illicit profits." Instead, the demand was phrased as an unambiguous demand: Having previously alleged "approximately $1.3 million in illegal profits," JA0037, 0044, 0065, 0072, the complaints—in their final section, captioned "Prayer for Relief"—explicitly demanded entry of "a Final Judgment …

24

Ordering Defendants and Relief Defendant to disgorge the proceeds of their ill-gotten gains, plus prejudgment interest," JA0053, 0082.

Instructive in this regard is *SEC v. Berlacher*, No. 07-3800, 2012 WL 512201 (E.D. Pa. Feb 15, 2012), a case cited by the district court for other reasons. There, as here, SEC's complaint alleged that the defendants realized a specific dollar amount ($1.7 million) "in ill-gotten gains as a result of the unlawful trading scheme." Complaint, *SEC v. Berlacher*, No. 07-3800, ECF Dkt. No. 1, at 2, 9 (filed Sept. 13, 2007). There, similar to here, the "Prayer for Relief" section of SEC's complaint then demanded a final judgment ordering the defendants "to disgorge the profits and proceeds they obtained as a result of their actions alleged herein and to pay prejudgment interest thereon." *Id*. at 20. The district court had no trouble reading those passages in tandem as constituting a demand for purposes of EAJA. 2012 WL 512201 at *7. Indeed, SEC itself did not quibble with that most natural reading of its complaint; it conceded that, as pled, the complaint "sought $1.7 million in disgorgement," insisting only that the demand was reasonable. SEC Brief, *Berlacher*, ECF Dkt. No. 126, at 20 (filed Feb. 7, 2007). The court ultimately agreed that the demand was reasonable, but that was because after the court trimmed SEC's case on a motion to dismiss, SEC filed an amended complaint that substantially dialed back its demand to an amount consistent with what the final judgment ultimately awarded. *See Berlacher,* 2012 WL 512201 at *7. Here, by contrast and

as previously noted, even after SEC had its most serious charges against Lemelson rejected at trial, SEC doubled down on its initial demands rather than dialing them back.

Finally, the district court erred in excusing the initial demands in SEC's complaints as "reasonable in light of the scope of the initial claims it brought." JA0177. That kind of comparison is exactly what the excessive demands provision rejects. Under the express terms of the statute, courts must assess the reasonableness of an agency demand not as compared to what the agency initially hoped it might conceivably attain if all the evidentiary stars were to align perfectly, but rather as compared to what the agency *did* attain in "the judgment finally obtained" after its evidence and legal theories were put to the test. 28 U.S.C. § 2412(d)(1)(D). The district court's more forgiving assessment of SEC's initial sanctions demands against the aspirational claims simultaneously asserted in its complaints not only contradicts the express instructions of EAJA but also would largely eviscerate the excessive demands clause because—assuming minimally responsible prosecutorial discretion—an agency would rarely risk sanctions under Rule 11 of the Federal Rules of Civil Procedure by frivolously demanding sanctions in its complaint that it could not conceivably attain even if it ultimately succeeded in proving all of its alleged facts and legal claims.

The district court's holding that the demands made in SEC's complaints were not excessive and unreasonable was erroneous and should be reversed.

## CONCLUSION

The Court should reverse the district court's decision and remand the case for further proceedings consistent with the Court's decision.

Dated: November 27, 2024                Respectfully submitted,

<div style="margin-left:40%">

*/s/ Russell G. Ryan*

Russell G. Ryan (Bar No. 124655)
Andreia Trifoi (Bar No. 1214670)
John J. Vecchione (Bar No. 1177417)
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
russ.ryan@ncla.legal

Douglas S. Brooks (Bar No. 50021)
LIBBY HOOPES BROOKS & MULVEY, P.C.
260 Franklin Street
Boston, MA  02110
(617) 338-9300
dbrooks@lhbmlegal.com

*Counsel for Appellants*

</div>

**CERTIFICATE OF COMPLIANCE**

This document complies with the 13,000-word limit established by FRAP 32(a)(7) because it contains 6,424 words. This document complies with the typeface and typestyle requirements of FRAP 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced serif typeface, Times New Roman, and set at 14-point or larger.

Dated: November 27, 2024     */s/ Russell G. Ryan*
              Russell G. Ryan

              *Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2024, I electronically filed the foregoing document, along with the Appendix and Addendum, with the United States Court of Appeals for the First Circuit using the CM/ECF system. Counsel for all parties will be served by the CM/ECF system:

Dated: November 27, 2024

*/s/ Russell G. Ryan*
Russell G. Ryan

*Counsel for Appellants*

# ADDENDUM

**Table of Contents**

1.  District Court's July 23, 2024 Memorandum and Order……………………..1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                       )
SECURITIES AND EXCHANGE                )
COMMISSION,                            )
                                       )
                   Plaintiff,          )
                                       )
v.                                     )
                                       )
GREGORY LEMELSON and LEMELSON          )
CAPITAL MANAGEMENT, LLC,               )          Civil Action
                                       )          No. 18-11926
                   Defendants,         )
                                       )
       and                             )
                                       )
THE AMVONA FUND, LP,                   )
                                       )
                   Relief Defendant.   )
_____)
```

**MEMORANDUM AND ORDER**

July 23, 2024

Saris, D.J.

**INTRODUCTION**

In this long-running, hard-fought, bitter litigation over an alleged "short-and-distort" scheme, Defendants Father Emmanuel Lemelson and Lemelson Capital Management (collectively "Lemelson") have moved for attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A) & (d)(1)(D). They claim to have incurred fees and costs of $1,789,051.64 defending against an enforcement action brought by the Securities and Exchange Commission. The SEC opposes the motion

on multiple grounds. Among other things, it argues that Lemelson was not a prevailing party, that the SEC's allegations were substantially justified, that attorney's fees are unwarranted because it did not make an unreasonable demand, and that Defendants' actions were willful. Initially, the SEC challenged Lemelson's financial eligibility under the EAJA as set forth by 28 U.S.C. § 2412(d)(2)(B), but it appears to have abandoned that challenge in light of supplemental information provided by Defendants regarding their net worth. See Dkt. 314. After a review of the record, Defendants' motion for attorney's fees and costs (Dkt. 305) is **DENIED**.

<div align="center">**BACKGROUND**</div>

In its amended complaint, the SEC asserted two claims against Defendants: one claim under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, and one claim under Section 206(4) of the Investment Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8 thereunder. See Dkt. 33 at 18-20. Under the Section 10(b) claim, the SEC alleged that Defendants made four material misstatements concerning a public company called Ligand Pharmaceuticals ("Ligand"). Defendants' allegedly misleading statements included: (1) a statement that a Ligand representative agreed that one of Ligand's most profitable drugs was "going away"; (2) a statement that Ligand's business partner had not consulted its auditor on any material issues and

had financial statements that were unaudited; (3) a statement that Ligand's partner did not intend to conduct preclinical studies or clinical trials; and (4) a statement that Ligand was insolvent and at substantial risk of bankruptcy. Id. at 11-17. The SEC also alleged that Defendants' actions constituted a scheme to defraud by driving down the price of Ligand's stock in order to profit from Defendants' short position. Under the Investment Advisers Act claim, the SEC alleged that Defendants also defrauded their own investors. The SEC alleged that Defendants had made "approximately $1.3 million in illegal profits." Id. at 4. At the end of its amended complaint, the SEC requested disgorgement of "ill-gotten gains," civil monetary penalties, and a permanent injunction against Defendants.

Following a seven-day jury trial, the jury found that Defendants made the first three misstatements, did not make the fourth regarding Ligand's insolvency, was not engaged in a scheme to defraud, and did not violate the Investment Advisers Act. At the remedy stage of the litigation, the SEC sought a $656,500 civil penalty against Father Lemelson, a $775,000 civil penalty against Lemelson Capital Management, $656,500 in joint-and-several disgorgement against both Defendants, prejudgment interest of $208,624, and an order permanently enjoining Defendants from future violations of Section 10(b). After hearing, the Court imposed a civil penalty of $160,000, issued a five-year injunction,

and ordered no disgorgement. <u>See</u> <u>S.E.C. v. Lemelson</u>, 596 F. Supp. 3d 227, 230 (D. Mass. 2022). The First Circuit affirmed on appeal. <u>See</u> <u>S.E.C. v. Lemelson</u>, 57 F.4th 17, 20 (1st Cir. 2023), <u>cert. denied sub nom.</u>, <u>Lemelson v. S.E.C.</u>, 144 S. Ct. 486 (2023).

## DISCUSSION

### I.   Prevailing Party & Substantial Justification

The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." <u>See</u> 28 U.S.C. § 2412(d)(1)(A). The threshold question is whether Lemelson is a "prevailing party" under the statute. There is no prevailing party unless there has been a "material alteration of the legal relationship of the parties." <u>Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 792-93 (1989). Where the government brings multiple claims against a party, the party can be deemed a "prevailing party" even if the government prevails on some its claims. <u>See, e.g.</u>, <u>Am. Wrecking Corp. v. Sec'y of Lab.</u>, 364 F.3d 321, 325 (D.C. Cir. 2004) (per curiam) (acknowledging that party qualified as prevailing party where two out of three citations against party were vacated and "willful" designation was removed from third citation); <u>S.E.C. v. Berlacher</u>, No. 07-3800, 2012 WL 512201, at *2 n.4 (E.D. Pa. Feb. 15, 2012) (finding

defendant qualified as prevailing party even though the court found he had engaged in two instances of securities fraud).

Here, the jury split the baby, and both sides prevailed on significant claims brought by the SEC. The SEC proclaims it is the victor because it proved that Defendants committed fraud under the Section 10(b) claim: it prevailed on allegations that Defendants made three misleading statements. However, the SEC lost on the scheme allegation and the allegation that Defendants made a misleading statement about Ligand's insolvency. The SEC also lost on its claim that Lemelson defrauded its own investors under the Investment Advisers Act. The SEC's loss on these claims affected the remedy the Court imposed. See, e.g., Lemelson, 596 F. Supp. 3d at 238 (recognizing "the jury's lack of a finding of scheme liability" in ordering no disgorgement). The Court concludes that Defendants have proven they qualify as a "prevailing party" under the EAJA on at least some of the SEC's claims. See Davis v. Nicholson, 475 F.3d 1360, 1363 (Fed. Cir. 2007) ("A party prevails in a civil action if he receives at least some relief on the merits of his claim.") (cleaned up) (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res., 532 U.S. 598, 603-04 (2001)).

The burden now shifts to the SEC to prove that its position was "substantially justified by a preponderance of the evidence." United States v. Yoffe, 775 F.2d 447, 450 (1st Cir. 1985). The

government's position is substantially justified where it has a "reasonable basis in both law and fact." Pierce v. Underwood, 487 U.S. 552, 564 (1988); see also Saysana v. Gillen, 614 F.3d 1, 5 (1st Cir. 2010) ("To be substantially justified, it is not necessary for the Government's position to be justified to a high degree; rather, the Government meets this standard if its position is justified in substance or in the main." (cleaned up) (quoting Pierce, 487 U.S. at 565)). Here, as the Court ruled in its opinions on Defendants' motion to dismiss and motion for summary judgment, the SEC had a reasonable basis for bringing both the Section 10(b) claim and the Investment Advisers Act claim. See S.E.C. v. Lemelson, 355 F. Supp. 3d 107, 109 (D. Mass. 2019) (denying motion to dismiss Section 10(b) claim based on plausible allegation that three of four statements were misleading); S.E.C. v. Lemelson, 532 F. Supp. 3d 30, 39-45 (D. Mass. 2021) (denying summary judgment on Section 10(b) claim and Investment Advisers Act claim). Therefore, the Court concludes that the SEC's overall position against Defendants was substantially justified. See Pierce, 487 U.S. at 569 (noting that a "string of successes" can be indicative that a position is substantially justified).

## II.  **The SEC's Demand**

Alternatively, Defendants argue that they are independently entitled to attorney's fees and costs because the SEC's sanction demands were unreasonably excessive throughout the litigation.

6

Under the EAJA, a litigant is entitled to "fees and other expenses related to defending against [an] excessive demand" if "the demand by the United States is substantially in excess of the judgment finally obtained by the United States and is unreasonable when compared with such judgment, under the facts and circumstances of the case." See 28 U.S.C. § 2412(d)(1)(D). As the party seeking fees, Defendants bear the burden of proving "(i) that the government's demand was substantially in excess of the award obtained by the judgment and (ii) that the government's demand was unreasonable compared to that judgment." United States ex rel. Wall v. Circle C Constr., LLC, 868 F.3d 466, 469-70 (6th Cir. 2017). The EAJA defines "demand" as "the express demand of the United States which led to the adversary adjudication," but excludes "a recitation of the maximum statutory penalty (i) in the complaint, or (ii) elsewhere when accompanied by an express demand for a lesser amount." See 28 U.S.C. § 2412(d)(2)(I).

The SEC states that it never made a pre-filing demand "which led to the adversary adjudication," which Defendants do not contest. Instead, Defendants point to the SEC's initial request in its amended complaint for $1.3 million in "ill-gotten gains," which Defendants argue is excessive in comparison to the Court's final judgment ordering a $160,000 civil fine and no disgorgement. The question, then, is whether the $1.3 million figure constitutes an "express demand" under the EAJA or, as the SEC contends, is simply

7

an undisputed factual allegation. On page 4 of the amended complaint, the SEC alleges that Defendants "generat[ed] approximately $1.3 million in illegal profits." See Dkt. 33 at 4. At the end of the complaint, on page 21, the SEC requested the Court order Defendants "disgorge the proceeds [of] their ill-gotten gains." Id. at 21. Combining both statements, the inference is that at the onset of the litigation, the SEC sought $1.3 million in disgorgement from Defendants. See Dkt. 312 at 19 (SEC conceding that it sought disgorgement "based on the undisputed $1.3 million profit figure" in its amended complaint). However, even if such a request constituted an "express demand," the statute excludes a "recitation of the maximum statutory penalty . . . in the complaint" from the statutory definition of "demand." See 28 U.S.C. § 2412(d)(2)(I). Under 15 U.S.C. § 78u(d)(5), the SEC is authorized to seek equitable relief, which the Supreme Court has held to include "a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims." Liu v. S.E.C., 591 U.S. 71, 75 (2020). The $1.3 million figure represents the maximum amount of disgorgement the SEC was permitted to seek, and its inclusion in the complaint is therefore not considered a "demand" under the EAJA. Moreover, the Court finds that the SEC's request for $1.3 million in disgorgement was reasonable in light of the scope of the initial claims it brought. See Circle C Constr., 868 F.3d at 470 (holding that both the "substantially

8

justified" inquiry and the "unreasonable demand" inquiry turned on whether the government's position was "justified to a degree that could satisfy a reasonable person").

Defendants also point to the SEC's post-verdict sanctions demand of $2,296,624 as evidence that its "demand remained beyond excessive" throughout the litigation. Dkt. 306 at 18. Although the Court acknowledges the large disparity between the SEC's post-verdict demand and the final judgment obtained by the government, a post-verdict demand is not an "express demand of the United States which led to the adversary adjudication" at the onset of the case. 28 U.S.C. § 2412(d)(2)(I); see United States v. One 1997 Toyota Land Cruiser, 248 F.3d 899, 905 (9th Cir. 2001) (holding that the "EAJA defines 'demand' as a static concept and not one that metamorphoses" since "the statute functions to deter the United States from using excessive initial demands to pressure private parties into settlements").

## ORDER

For the reasons stated above, Defendants' motion for attorney's fees and costs (Dkt. 305) is **DENIED**.


SO ORDERED.

                                   /s/ PATTI B. SARIS
                                   Hon. Patti B. Saris
                                   United States District Judge