No. 24-1754

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

---

U.S. SECURITIES & EXCHANGE COMMISSION,
*Plaintiff-Appellee*,

v.

GREGORY LEMELSON; LEMELSON CAPITAL MANAGEMENT, LLC,
*Defendants-Appellants*,

THE AMVONA FUND, LP,
*Relief Defendant.*

---

Appeal from the United States District Court
for the District of Massachusetts
No. 1:18-cv-11926-PBS

---

## BRIEF OF APPELLEE
## SECURITIES AND EXCHANGE COMMISSION

---

JEFFREY B. FINNELL
*Acting General Counsel*

ELIZABETH MCFADDEN
*Deputy General Counsel*

MELINDA HARDY
*Assistant General Counsel*

TIMOTHY N. MCGAREY
*Special Trial Counsel*

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549

# TABLE OF CONTENTS

PRELIMINARY STATEMENT...................................................................1

STATEMENT ON ORAL ARGUMENT...............................................1

COUNTERSTATEMENT OF THE ISSUES .........................................2

COUNTERSTATEMENT OF THE CASE............................................2

   A.   Background.................................................................................2

   B.   Proceedings Below ....................................................................5

      1.   Appellants' motion for fees and expenses.................................5

      2.   The district court's denial of Appellants' EAJA motion ...........6

   C.   The Current Appeal .................................................................7

STANDARD OF REVIEW ...............................................................8

SUMMARY OF ARGUMENT..........................................................8

ARGUMENT ................................................................................9

I.   Appellants cannot rely on the excessive demand provision of EAJA because they have not identified a "demand" and because they committed a willful violation of law and acted in bad faith......................................................9

   A.   The Commission did not issue a "demand" to Appellants.........................10

      1.   The EAJA does not apply to the Commission's request for relief in its post-trial briefing. ...........................................................11

      2.   The Complaint and Amended Complaint are not demands within the meaning of the term in EAJA. .......................................................15

   B.   Even if the Commission had made a demand, Appellants would not be entitled to an award because they committed willful violations and acted in bad faith... ...........................................................18

II.   Even if Appellants are eligible to seek an award under the EAJA, the relief the Commission sought was reasonable. ...............................................21

   A.   The remedies requests in the Commission's Complaint and Amended Complaint were reasonable.................................................21

      1.   The Commission's request for disgorgement was reasonable. ...............21

      2.   The Commission's request for entry of a permanent injunction against Lemelson was reasonable. ...............................................22

3.     The Commission's request for assessment of a civil penalty was reasonable. ...........................................................................................23

B.     The Commission's post-verdict remedies requests were reasonable. .........23

III.    Appellants can only seek an award of fees and expenses expended defending against an excess demand. .....................................................................................27

IV.    The amicus briefs do not provide any basis for awarding Appellants fees or expenses. ................................................................................................................28

CONCLUSION .....................................................................................................29

# TABLE OF AUTHORITIES

**CASES**                                                          **Pages(s)**

*Am. Wrecking Corp. v. Sec'y of Labor*, 364 F.3d 321 (D.C. Cir 2004) ..................27

*Aronov v. Napolitano*, 562 F.3d 84 (1st Cir. 2009) ...................................8

*Bryan v. United States*, 524 U.S. 184 (1998)...................................... 18, 19

*In re Clarence S. Wurts*, 76 S.E.C. Docket No. 492 (Oct. 31, 2001).....................12

*IRS v. Murphy*, 892 F.3d 29 (1st Cir. 2018)....................................... 18, 19

*Lemelson v. SEC*, 144 S. Ct. 486 (2023)................................................5

*Mejia v. O'Malley*, 120 F.4th 1360 (9th Cir. 2024)...................................13

*Michel v. Mayorkas*, 68 F.4th 74 (1st Cir. 2023)...................................8, 13

*Nowd v. Rubin*, 76 F.3d 25 (1st Cir. 1996) ...........................................8

*Park Manor, Ltd. v. HHS*,

    495 F.3d 433 (7th Cir. 2007), *cert. denied*, 552 U.S. 1099 (2008) ........................12

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)..................................19

*Scarborough v. Principi*, 541 U.S. 401 (2004) .......................................13

*SEC v. Berlacher*, 2012 U.S. Dist. LEXIS 19011 (E.D. Pa. Feb. 14, 2012)............11

*SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005) .............................................24

*SEC v. Lemelson*, 57 F.4th 17 (1st Cir. 2023) ......................................4, 16

*SEC v. Wall*, 2020 U.S. Dist. LEXIS 56152 (D. Me. Mar. 31, 2020).....................16

*United States v. Gelin*,

    712 F.3d 612 (1st Cir. 2013), *cert. denied*, 571 U.S. 916 (2013) ........................13

*United States v. One 1997 Toyota Land Cruiser*,

    248 F.3d 899 (9th Cir. 2001) .......................................................11, 13

**STATUTES & RULES**                                            Pages(s)

Securities Act of 1933 (15 U.S.C. § §77a *et seq.*)

15 U.S.C. § 77t(d)(2)(C) ...........................................................................25


Securities Exchange Act of 1934 (15 U.S.C. § 78a *et seq.*)

15 U.S.C. § 78j(b) .................................................................................2, 15

15 U.S.C. § 78u(d)(1).................................................................................18

15 U.S.C. § 78u(d)(3)...............................................................................3, 15

15 U.S.C. § 78u(d)(3)(B)(iii) ......................................................................24


17 C.F.R. § 240.10b-5 ...........................................................................2, 15


Investment Advisers Act of 1940 (15 U.S.C. § 80b-1 *et seq.*)

15 U.S.C. § 80b-2(a)(11).............................................................................2

15 U.S.C. § 80b-6(4)...............................................................................3, 15

15 U.S.C. § 80b-9(d)...................................................................................18

15 U.S.C. § 80b-9(e)...................................................................................15


17 C.F.R. § 275.206(4)-8 .........................................................................3, 15


Equal Access to Justice Act

28 U.S.C. § 2412(d) ......................................................................................5

28 U.S.C. § 2412(d)(1)(A)........................................................................5, 6

28 U.S.C. § 2412(d)(1)(D) .............................................................. 2, 5, 7, 8, 10

28 U.S.C. § 2412(d)(2)(I) .....................................................................6, 8, 10, 11

**OTHER AUTHORITIES**                                                    **Pages(s)**

142 Cong. Rec. E571-01 (Mar. 28, 1996) (Con. Henry Hyde)............................. 13,
14, 17

142 Cong. Rec. S2156 (Mar. 15, 1996) (Sen. Bumpers).........................................14

Inflation Adjustments to the Civil Monetary Penalties Administered by the
    Securities and Exchange Commission (as of Jan. 15, 2022) (cited by district
    court) (available at https://www.sec.gov/enforce/civil-penalties-inflation-
    adjustments) ........................................................................................................24

Judith Kramer, *Equal Access to Justice Act Amendments of 1996: A New Avenue
    for Recovering Fees From the Government*, 51 Admin. L. Rev. 363 (1999) 14, 15

Merriam-Webster's on-line dictionary,  (last visited Jan. 24, 2025).........................16

## PRELIMINARY STATEMENT

A jury found Appellants Gregory Lemelson ("Lemelson") and Lemelson Capital Management ("LCM") liable for committing securities fraud. That verdict was affirmed on appeal, and Appellants' petition for a writ of certiorari was denied. Appellants now contest the district court's determination that they are not entitled to an award of attorneys' fees and expenses incurred defending this matter under the Equal Access to Justice Act ("EAJA") 28 U.S.C. § 2412(d). Appellants do not—because they cannot—claim that the Commission made an "excessive demand" that forced them to litigate the case below. Indeed, the Commission never made *any* "express demand" of Lemelson that "led to the adversary adjudication," as the EAJA requires. 28 U.S.C. § 2412(d)(2)(I) (definition of "demand"). An award of attorneys' fees and expenses would be inequitable and would deter the Commission from vindicating the rights of the investing public. The district court's judgment should be affirmed.

## STATEMENT ON ORAL ARGUMENT

The Securities and Exchange Commission ("Commission" or "SEC") believes that oral argument is unnecessary because this appeal does not concern any difficult questions of law and the issues are adequately presented by the briefs and the opinions below.

## COUNTERSTATEMENT OF THE ISSUES

Whether the district court erred by denying Appellants request for attorneys' fees and expenses under the excessive demand provision of the EAJA, 28 U.S.C. § 2412(d)(1)(D), where the only remedies request the Commission made in connection with initiating an enforcement action was a request in its complaint for the remedies permitted by law and where Appellants were found liable for engaging in fraudulent conduct.

## COUNTERSTATEMENT OF THE CASE

### A.    Background

In 2018, the Commission brought a civil law enforcement action against Lemelson and LCM.  Lemelson founded LCM, and LCM was an investment adviser within the meaning of Section 202(a)(11) of the Investment Advisers Act of 1940 ("Advisers Act") (15 U.S.C. § 80b-2(a)(11)).  LCM managed the Amvona Fund, a hedge fund Lemelson founded in 2012 and a relief defendant in this action. JA0038-0039.

The Commission alleged that Lemelson made four untrue statements of material facts in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) thereunder and that he made the statements as part of a scheme to drive down the price of the stock of Ligand Pharmaceuticals, Inc. ("Ligand") and defraud investors

holding Ligand stock. The Commission also alleged that Lemelson violated Section 206(4) of the Advisers Act (15 U.S.C. § 80b-6(4)) and Rule 206(4)-8 (17 C.F.R. § 275.206(4)-8) thereunder by misleading investors in the Amvona Fund.

In the original Complaint, the Commission requested that the district court (1) permanently enjoin Lemelson and LCM from violating Section 10(b) and Rule 10b-5 thereunder as well as Section 206(4) and Rule 206(4)-8 thereunder; (2) direct Lemelson, LCM, and Amvona Fund "to disgorge the proceeds [of] their ill-gotten gains, plus prejudgment interest"; and (3) direct Lemelson and LCM to pay appropriate civil monetary penalties under the Section 21(d)(3) of the Exchange Act (15 U.S.C. § 78u(d)(3)) and Section 209(e) of the Advisers Act (15 U.S.C. § 80b-9). JA0053-0054; JA0082-0083. The request did not state an amount the Commission was seeking as disgorgement or for a penalty. JA0037, JA0065.

After the district court granted a motion to dismiss in part, dismissing a claim regarding one alleged false statement and allowing the Commission to amend that claim, the Commission filed an Amended Complaint making the same claims as the original Complaint and seeking the same relief. JA0062-0083.

After a seven-day trial, a jury unanimously found that Lemelson fraudulently made three untruthful statements of material facts in violation of Section 10(b) and

Rule 10b-5. JA0116-0117. The district court denied Appellants' post-trial motion seeking judgment as a matter of law and a new trial. Dkt. 239; JA0118.

The Commission filed a motion for final judgment seeking an injunction permanently restraining and enjoining future violations of Section 10(b) and Rule 10b-5; a $656,500 civil penalty against Lemelson; a $775,000 civil penalty against LCM; $656,500 in joint and several disgorgement against Lemelson and LCM; and prejudgment interest of $208,624. JA0119.

On March 30, 2022, the district court entered final judgment ordering Lemelson to pay a civil penalty of $160,000 and enjoining Lemelson and LCM from further violations of Section 10(b) and Rule 10b-5 for five years. JA0166. On April 27, 2022, Appellants filed another motion seeking a new trial, or alternatively to alter or amend the judgment. Dkt. 280. The district court denied this motion on August 4, 2022. JA0167-JA0169.

Appellants appealed the final judgment, arguing that there was insufficient evidence supporting the jury's verdict. They also argued that Lemelson's statements that the jury found violated Section 10(b) and Rule 10b-5 were protected by the First Amendment and that the district court abused its discretion and committed legal error by entering the injunction. This Court affirmed the district court's order in its entirety. *SEC v. Lemelson*, 57 F.4th 17 (1st Cir. 2023);

JA0179-JA0211.  The Supreme Court denied Appellant's petition for *certiorari*. *Lemelson v. SEC*, 144 S. Ct. 486 (2023).

**B.      Proceedings Below**

**1.      <u>Appellants' motion for fees and expenses</u>**

Appellants filed a timely motion seeking an award under the EAJA, 28 U.S.C. § 2412(d), of $1,789,051.64 to compensate them for fees and expenses "incurred in defending" the enforcement action.[1]  Dkt. 305.  Appellants' main claim was that they were entitled to an award under 28 U.S.C. § 2412(d)(1)(A) because they alleged that the Commission's case was not substantially justified.  Dkt. 305 at 2; Dkt. 306 at 9-16.  Appellants briefly argued that they were also entitled to fees and expenses under 28 U.S.C. § 2412(d)(1)(D) "because the Commission's demand *at the outset of the litigation* was unreasonably excessive in comparison to the final judgment" under 28 U.S.C. § 2412(d)(1)(D).  Dkt. 305 at 2 (emphasis added).  Appellants asserted that the Commission's prayer for relief in the original complaint and its post-verdict request for sanctions were excessive demands under the facts and circumstances of the case.  Dkt. 306 at 17-18.

In Opposition, the Commission rebutted Appellants' claim that the Commission's action was not "substantially justified."  Dkt. 312 at 7-17. In response to Appellants' claim that the Commission made an excessive demand, the

---

[1] Appellants seek $1,594,159.42 in fees and $194,892.22 in costs.

Commission explained that the term "demand" includes only pre-filing demands, and the Commission never made such a demand. Dkt. 312 at 17-18; *see also* 28 U.S.C. § 2412(d)(2)(I). The Commission also argued that parties who "committed a willful violation of law" cannot recover under the EAJA provision concerning "unreasonable demands" and Lemelson was such a party because the jury found that he acted with scienter on three occasions. Dkt. 312 at 18. The Commission asserted that Lemelson acted in bad faith by leaking documents to the press in violation of a protective order and threatening a priest who provided information to the Commission he believed was false. Dkt. 312 at 16-17. Finally, the Commission explained that the remedies it sought in the Complaint were the "remedies expressly authorized by statute and prevailing law." Dkt. 312 at 19.

### 2. The district court's denial of Appellants' EAJA motion

The district court denied Appellants' EAJA motion (JA0170-JA0178) and noted that the jury issued a split verdict after a seven-day trial, ultimately finding Appellants liable for three violations of Section 10(b) and Rule 10b-5. JA0174. Appellants and the Commission both prevailed on significant claims at trial. *Id.*

The district court concluded that Appellants were not entitled to an award pursuant to 28 U.S.C. § 2412(d)(1)(A) because the Commission's position had a reasonable basis in both fact and law and, therefore, was substantially justified. JA0174-0175. The district court also rejected Appellants' argument that they were

entitled to an award under EAJA's "excessive demand" provision (28 U.S.C. § 2412(d)(1)(D)).  The district court stated that even if the Complaint's request for disgorgement "constituted an 'express demand,' the statute excludes a 'recitation of the maximum statutory penalty . . . in the complaint' from the statutory definition of 'demand,'" and the Commission's request for disgorgement was such a recitation.  JA0177.  The district court also found that "the SEC's request for $1.3 million in disgorgement was reasonable in light of the scope of the initial claims it brought."  JA0177.  The district court next addressed the Commission's post-verdict sanctions request and concluded that the definition of "demand" set forth in subsection 2412(d)(1)(A) did not apply to that request because the definition includes only demands that "led to the adversary adjudication."  JA0178.

## C.  The Current Appeal

In this appeal, Appellants' challenge the decision of the district court denying their application for an award of legal fees and expenses pursuant to EAJA.  JA0170-0178.  Appellants do not challenge the district court's denial of an EAJA award under subsection 2412(d)(1)(A).  Appellants argue only that the district court erred by concluding that the prayers for relief in the Commission's original and amended complaints and the remedies sought in the Commission's motion for final judgment did not constitute an "excess" demand under subsection 2412(d)(1)(D) that warranted an award of fees and expenses.

## STANDARD OF REVIEW

A district court's determinations under EAJA regarding such issues as reasonableness are reviewed for an abuse of discretion. *Michel v. Mayorkas*, 68 F.4th 74, 78 (1st Cir. 2023) (citing *Aronov v. Napolitano*, 562 F.3d 84, 88 (1st Cir. 2009)). This court will find an abuse of discretion "when a material factor deserving significant weight is ignored, when an improper factor was relied upon, or when all proper and no improper factors are assessed, but the [district] court makes a serious mistake in weighing them." *Id*. (citations omitted). Interpretations of statutory language are reviewed *de novo*. *Nowd v. Rubin*, 76 F.3d 25, 26 n.1 (1st Cir. 1996).

## SUMMARY OF ARGUMENT

This Court should affirm the district court's decision denying Appellants' motion seeking an award of fees and expenses under EAJA. The EAJA's "excessive demand" provision applies only to "express demand[s]" that "le[a]d to the adversary adjudication." 28 U.S.C. § 2412(d)(2)(I). It also does not allow recovery of fees or expenses when "the party has committed a willful violation of law or otherwise acted in bad faith." 28 U.S.C. § 2412(d)(1)(D).

Plaintiff's post-verdict request for remedies is not a statement that "led to the adversary adjudication," so it has not identified a demand. In addition, the Complaint and Amended Complaint do not contain any "express demand[s]"

because they identify the type of remedies typically available to the Commission in enforcement actions and do not specify amounts the Commission would seek to resolve the case.

Appellants are also not entitled to fees and expenses because they committed willful violations and acted in bad faith. Appellants violated Section 10(b) of the Exchange Act, which requires a finding of intentional misconduct or a high degree of recklessness. Lemelson also violated a protective order, stated that he did not regret any actions found to be fraudulent, and threatened a person who provided information to the Commission.

Even if Appellants were eligible for fees and expenses under the excessive demand provision of EAJA, they could not prevail because the Commission did not make any excessive demands. The Commission's requests for remedies were reasonable. The Commission reasonably sought a permanent injunction to prevent Appellants from engaging in further fraud, disgorgement of all ill-gotten gains, and penalties consistent with the type of penalty the district court ultimately awarded.

## ARGUMENT

**I.    Appellants cannot rely on the excessive demand provision of EAJA because they have not identified a "demand" and because they committed a willful violation of law and acted in bad faith.**

The EAJA allows certain parties to recover fees and other expenses if the United States has made an excessive demand. The statute states:

> If, in a civil action brought by the United States . . . , the demand by the United States is substantially in excess of the judgment finally obtained by the United States and is unreasonable when compared with such judgment, under the facts and circumstances of the case, the court shall award to the party the fees and other expenses related to defending against the excessive demand, *unless the party has committed a willful violation of law or otherwise acted in bad faith*, or special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(D) (emphasis added). The EAJA limits the demands covered by the statute:

> "demand" means the *express demand* of the United States *which led to the adversary adjudication* but shall not include a recitation of the maximum statutory penalty (i) in the complaint, or (ii) elsewhere when accompanied by an express demand for a lesser amount.

28 U.S.C. § 2412(d)(2)(I) (emphasis provided).

Appellants are not eligible to recover fees or other expenses under this provision because they have not identified an "express demand" that "led to the adversary adjudication" and, further, they "committed a willful violation of law or otherwise acted in bad faith."

## A.     The Commission did not issue a "demand" to Appellants.

As stated above, a "demand" for purposes of the EAJA must be an "express demand" and must be a demand that "led to the adversary adjudication." 28 U.S.C. § 2412(d)(2)(I). The Commission's request for relief in its post-trial briefing was not a "demand" because it did not lead to an adjudication; it followed the adjudication. Also, the requests for relief in both the Complaint and Amended Complaint were not express demands for certain amounts; they were general

10

statements of the relief available by law in a Commission enforcement action. Significantly, Appellants have not alleged that the Commission made *any* demand prior to filing its initial complaint (JA 0176) or otherwise exerted the type of pre-filing pressure that may have forced Appellants to settle the matter on punitive terms that Sections 2412(d)(1)(D) and (d)(2)(I) were intended to prevent.

1.      **The EAJA does not apply to the Commission's request for relief in its post-trial briefing.**

The district court correctly held that "a post-verdict demand is not an 'express demand of the United States which led to the adversary adjudication' at the onset of the case."  JA0178 (quoting 28 U.S.C. § 2412(d)(2)(I) and citing *United States v. One 1997 Toyota Land Cruiser*, 248 F.3d 899, 905 (9th Cir. 2001)).

Appellants state that "[t]here is no textual or logical basis for limiting this important protection to initial demands made 'at the onset of the case'" (Br. at 15), but they provide no support for their claim (Br. at 16) that the phrase "led to the adversary adjudication" could be referring to a claim that follows a trial. The cases Appellants rely on (Br. at 15) do not discuss whether or when post-complaint requests for relief could be deemed to lead to an adversary adjudication.  *See SEC v. Berlacher*, 2012 U.S. Dist. LEXIS 19011, at *20 (E.D. Pa. Feb. 14, 2012) (holding that a demand by the SEC was not substantially in excess of the judgment or unreasonable where SEC originally sought $1.7 million in disgorgement, civil

penalties, and an injunction and the court awarded only $352,363.68 in disgorgement); *In re Clarence S. Wurts*, 76 S.E.C. Docket No. 492 (Oct. 31, 2001) (initial decision by an SEC ALJ finding that a demand for sanctions in an SEC administrative proceeding was not excessive). The fact that those cases entertained the possibility that demands made following a complaint could be "demands" under the statute in the course of ultimately declining to award fees reveals nothing about the meaning of the term "demand."

Appellants also mistakenly rely on the fact that the Sixth Circuit compared Federal Rule of Civil Procedure 68 and Section 2412(d)(1)(D) and point to the fact that Rule 68 is not limited to offers "served before or immediately after the filing of the complaint." Br. at 13 (*Park Manor, Ltd. v. HHS*, 495 F.3d 433, 437 (7th Cir. 2007), *cert. denied*, 552 U.S. 1099 (2008)). In contrast to the EAJA, Rule 68 provides a specific procedure for a defendant to make an offer of judgment prior to trial or a post-trial hearing on liability and seek costs if the plaintiff does not accept the offer. The EAJA does not contain comparable procedures. And, more importantly, Rule 68 does not include the phrase "led to the adversary adjudication" or anything similar. Rule 68 provides no basis for ignoring the language in the EAJA.

The only court that appears to have addressed the phrase "led to the adversary adjudication" in the EAJA's definition of "demand" has recognized that

"EAJA defines 'demand' as a static concept and not one that metamorphoses over the course of settlement negotiation." *One 1997 Toyota Land Cruiser*, 248 F.3d at 905. This interpretation correctly recognizes that the plain meaning of the phrase "led to" dictates that the demand must *precede* the adjudication at issue. Moreover, EAJA is "a waiver of the government's sovereign immunity 'and so must be construed strictly in favor of the government.'" *Michel v. Mayorkas*, 68 F.4th 74, 78 (1st Cir. 2023) (quoting *Scarborough v. Principi*, 541 U.S. 401, 407 (2004)); *see also Mejia v. O'Malley*, 120 F.4th 1360, 1366 (9th Cir. 2024) (EAJA should be "strictly construed in favor of the United States" and "not enlarged beyond what the language requires" (citation omitted)).

EAJA's legislative history supports finding that, under the EAJA, a demand must occur in connection with the bringing of an enforcement action. *See United States v. Gelin*, 712 F.3d 612, 617 (1st Cir. 2013), *cert. denied*, 571 U.S. 916 (2013) ("When interpreting an unambiguous statute, . . . we may also resort to legislative history to corroborate 'that the statute's plain meaning does not lead to absurd results." (cleaned up)). Congressman Henry Hyde, a proponent of the excessive demand provisions in the EAJA, stated:

> As used in these amendments, the term "demand" means an express written demand that leads directly to an adversary adjudication or civil action. Thus*, the "demand" at issue would be the government's demand that was pending upon commencement of the adjudication or action. . . .* In the case of a civil action brought by the United States,

the demand could be in the form of a demand for settlement issued
prior to commencement to the litigation.

142 Cong. Rec. E571-01, at *573 (Mar. 28, 1996) (Remarks of Cong. Henry Hyde)

(stating that § 2412(d)(1)(D) was intended to induce "government attorneys . . .

not to routinely issue. . . demands at the high end of the scale merely as a way of

pressuring small entities to agree to quick settlements.").

Appellants cite (Br. at 5, 22) an article discussing Senate Bill 942, an earlier

proposal to amend EAJA, which included language that was significantly broader

than what was eventually adopted as subsections 2412(d)(1)(D) and (d)(2)(I).

Judith Kramer, *Equal Access to Justice Act Amendments of 1996: A New Avenue
for Recovering Fees From the Government*, 51 Admin. L. Rev. 363 (1999).[2]  But

Senate Bill 942 was never enacted into law.  And that article recognizes that:

> [T]he ultimate adoption of the more restrictive "demand" language in
> the 1996 Amendments without explanation may enable one to infer
> that the Congress intended to limit the relevant demand to a particular

---

[2] The bill would have mandated that a government agency's position in an action
against a small business that included "[a] citation, assessment, fine, penalty or
demand for settlement" sought by the agency would only be "substantially
justified" if the government's recovery "does not substantially exceed the value of
the final judgment" obtained in the action.  Kramer at 381.  Kramer noted that one
Senate sponsor also stated that SB 942 would enable a business owner to recover
fees if the government's judgment award was "disproportionately less than an
express demand made by the government *at some point during the suit*."  *Id.*
(citing 142 Cong. Rec. S2156 (Mar. 15, 1996) (Sen. Bumpers)) (emphasis
provided).

point in time, and that point is prior to the initiation of formal
proceedings.

Kramer at 382.

In light of the plain language of the statutory definition of "demand," only

statements that led to the enforcement action against Appellants can be demands.

The Commission's post-verdict request for relief was plainly not such a demand

and consequently cannot be the basis for an award of fees or expenses.

### 2. The Complaint and Amended Complaint are not demands within the meaning of the term in EAJA.

Since demands must lead to an "adversary adjudication," Appellants must

rely on statements related to the initiation of the enforcement action, and those

statements must be "express demand[s]." Appellants rely on the Complaint and

Amended Complaint,[3] but those documents do not contain an "express demand."

In its Prayer for Relief, the Commission sought a final judgment:

I.  Permanently restraining and enjoining Defendants, and their
    agents, servants, employees, attorneys and those person in
    active concert or participation with them, who receive actual
    notice of the order by personal service or otherwise, from
    violating Section 10(b) of the Exchange Act [15 U.S.C. §
    78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and
    Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and
    Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8];

II. Ordering Defendants and Relief Defendant to disgorge the
    proceeds [of] their ill-gotten gains, plus prejudgment interest;

---

[3] *See* JA 0176 ("The SEC states that it never made a pre-filing demand 'which led
to the adversary adjudication,' which Defendants do not contest.").

III.      Ordering Lemelson and LCM to pay appropriate civil monetary
          penalties under Section 21(d)(3) of the Exchange Act [15
          U.S.C. § 78u(d)(3)] and Section 209(e) of the Advisers Act [15
          U.S.C. § 80b-9(e)];

IV.       Retaining jurisdiction of this action in accordance with the
          principles of equity and the Federal Rules of Civil Procedure in
          order to implement and carry out the terms of all orders and
          decrees that may be entered or to entertain any suitable
          application of motion for additional relief within the
          jurisdiction of this Court; and

V.        Granting such other and further relief as this Court may
          determine to be just and necessary.

JA0053-0054; JA0082-0083. These remedies are typical of those the

Commission seeks in all enforcement actions:

> 'The court has broad discretion to impose civil remedies' for securities
> laws violations. . . . For the violations at issue, the SEC seeks relief
> in the form of permanent injunctions, disgorgement of ill-gotten
> gains, prejudgment interest, and civil monetary penalties. . . .  These
> remedies are appropriate in the  circumstances.

*SEC v. Wall*, 2020 U.S. Dist. LEXIS 56152, *24 (D. Me. Mar. 31, 2020) (citation

omitted) (cited in *SEC v. Lemelson*, 57 F.4d 17, 31 (1st Cir. 2023)).

Appellants do not discuss the requirement that a demand must be "express."

Based on a common dictionary definition, a demand is "express" if it is "directly,

firmly, and explicitly stated" and "exact, precise."  *See* Merriam-Webster on-line

dictionary (https://www.merriam-webster.com/dictionary/express).  The

Commission's general statements in its complaints reflecting the extent of the

Commission's authority to seek remedies are not express demands because they do not provide specific amounts or show what the Commission would have required to resolve the case.

The Commission's request for appropriate civil monetary penalties under Section 21(d)(3) of the Exchange Act and Section 209(e) of the Advisers Act does no more than refer to what may be available as a penalty under statute. Appellants claim that by alleging that "Lemelson's conduct involved fraud, deceit, or deliberate or reckless disregard of regulatory requirements and resulted in substantial loss, or significant risk or substantial loss to other persons," the SEC was signaling that it was seeking "the most severe monetary penalties." Br. at 21 (citing JA0038, JA0066). Appellants do not and cannot explain how such allegations could be deemed to be an "express demand."

Similarly, the request for disgorgement does no more than seek disgorgement of ill-gotten gains, plus prejudgment interest. Appellants claim that "fairly read" the Complaint was demanding $1.3 million in disgorgement. Br. at 20. But the allegations in the body of the Complaint and Amended Complaint that that Lemelson "generat[ed] approximately $1.3 million in illegal profits" (JA0037, JA0065) do not create an express demand. At most, when considered together with the prayer for disgorgement, they illustrate the amount of disgorgement the Commission could seek based upon the facts as alleged in the complaint.

Moreover, as explained above, the purpose of the excessive demand provisions in the EAJA was to address what agencies were demanding to settle a case.  *See* 142 Cong. Rec. E 571, at *573 (Remarks of Cong.  Henry Hyde).  Here, Appellants do not contest that the Commission never made such a pre-filing demand that led to the adversary adjudication.  Piecing together parts of a Complaint where a party never made an express demand in settlement discussions is not what Congress was seeking to address. JA0176.

Finally, the request for a permanent injunction is a standard request that reflects that the Exchange Act authorizes the Commission to bring enforcement actions "to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond."  15 U.S.C. § 78u(d)(1); *see also* 15 U.S.C. § 80b-9(d) (similar authorization in Investment Advisers Act).

**B.**    **Even if the Commission had made a demand, Appellants would not be entitled to an award because they committed willful violations and acted in bad faith.**

An EAJA applicant cannot recover an award of fees and expenses under subsection 2412(d)(1)(D) if the applicant "has committed a willful violation of law or otherwise acted in bad faith."  In the civil context, the term "willful" "differentiates between deliberative and unwitting conduct."  *IRS v. Murphy*, 892 F.3d 29, 35 (1st Cir. 2018) (quoting *Bryan v. United States*, 524 U.S. 184, 191

(1998)).[4] Appellants would not be entitled to an award even if they could identify a demand because they committed an intentional violation of the law and acted in bad faith.

The district court's charge to the jury at the end of the trial instructed jurors that the Commission bore the burden of demonstrating that Lemelson acted with the requisite "state of mind" element prescribed in Rule 10(b). The district court stated that the Commission needed to show that Lemelson "had actual knowledge of the false or misleading nature of the statements, meaning that he had . . . the conscious intent to defraud." Dkt. 255 at 7-109 (Trial Trans. Day 7, Nov. 3, 2021). Alternatively, jurors were instructed that Lemelson could be found liable if the Commission proved that he acted "with a high degree of recklessness" when making the statements, which the court described as conduct that is "an extreme departure from the standards of ordinary care and presents a danger of misleading buyers or sellers" as to either be "known to the defendant or so obvious that the defendant must have been aware of it." Dkt. 255 at 7-109.

---

[4]  In *Murphy*, 892 F.3d at 35, the Court explained further:

> In criminal law, ["willfully"] "typically refers to a culpable state of mind," such that a "willful violation" occurs only when a defendant "act[s] with knowledge that his conduct [is] unlawful." *Bryan*, 524 U.S. at 191-92, 118 S.Ct. 1939. In contrast, "[c]ivil use of the term ... typically presents neither the textual nor the substantive reasons for pegging the threshold of liability at knowledge of wrongdoing." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 n.9 (2007).

By finding that each of Lemelson's three misstatements of fact violated Section 10(b), the jury concluded that Lemelson either intentionally made the statements with actual knowledge of their false or misleading nature with a conscious intent to defraud investors or acted with a high degree of recklessness that amounted to a form of intentional misconduct. Such conduct precludes Appellant's recovery of an EAJA award under subsection 2412((d)(1)(D).

Lemelson should also be precluded from receiving an award because he acted in bad faith. Not only are the misleading statements for which he was found liable evidence of bad faith, but Lemelson's conduct during the enforcement action showed a contempt for any efforts to address his fraudulent conduct. For example, the district court sanctioned Lemelson for violating a protective order entered by the district court by providing confidential material to the press. The district court sanctioned Lemelson $100 for each page of confidential material he gave to the journalist and imposed other restrictions on Lemelson. Dkt. 102, 1-2. Also, Lemelson never took advantage of opportunities to correct his misstatements. Rather, when given a chance to speak at a post-verdict argument, Lemelson stated that he would "never regret the things [he] did." JA0208-0209. Finally, the district court noted that Lemelson had threatened another priest who provided information to the Commission that Lemelson believed to be false. JA0148.

Allowing a defendant who was liable for making fraudulent statements, who never accepted responsibility for his misconduct, and who was sanctioned for violating a protective order would be entirely inconsistent with the purposes of the excessive demand provision of the EAJA.

**II.     Even if Appellants are eligible to seek an award under the EAJA, the relief the Commission sought was reasonable.**

**A.     The remedies requests in the Commission's Complaint and Amended Complaint were reasonable.**

The Commission's requests for a permanent injunction, disgorgement, and a penalty in its initial Complaint and Amended Complaint were reasonable.  *See* JA0053-0054; JA0082-0083. Thus, even if Appellants had identified a demand on which they could base a claim and had not committed willful violations of law or acted in bad faith, they could not recover fees and expenses.

**1.     The Commission's request for disgorgement was reasonable.**

The Commission reasonably sought disgorgement of ill-gotten gains, and Appellants have not argued that it was unreasonable for the Commission to seek disgorgement.  Their only contention is that seeking $1.3 million in disgorgement was unreasonable.  The Commission's Complaint and Amended Complaint did not include a request for $1.3 million in the Prayer for Relief, but both complaints alleged that "Lemelson had 'covered' the vast majority of Amvona's short position

in Ligand generating approximately $1.3 million in illegal profits."  JA0037; JA0065.  Significantly, Appellants' answer to the Amended Complaint "[a]dmitted that Father Emmanuel had 'covered' the vast majority of Amvona's short position in Ligand by October 13 and had generated approximately $1.3 million in profits on behalf of Amvona."  Dkt. 34, par. 8.  Given this admission and the fact that Appellants were found liable for three misstatements relating to Ligand, the Commission reasonably sought disgorgement of illegal gains.  Appellants have not provided a basis for concluding that the district court abused its discretion in finding that the Commission's disgorgement request "was reasonable in light of the scope of the initial claims it brought."  JA0177.

### 2. The Commission's request for entry of a permanent injunction against Lemelson was reasonable.

The Commission also reasonably sought a permanent injunction.  While the district court determined that a five-year injunction was sufficient, the reasons the district court provided for that injunction show that the Commission had a reasonable basis for seeking a permanent injunction when it brought the case.  The district court concluded that an injunction was necessary because one of Lemelson's three misstatements of fact was "particularly egregious," because his employment as an investment adviser at a new fund he established left him in a position to commit further violations, and because he refused to recognize the wrongfulness of his action.  JA0150-0151.  The district court also noted that

Lemelson maintained a "pugilistic approach to the litigation" as evidenced by his leaking documents to the press in violation of a protective order, indicating that "he has not learned his lesson." JA0150-151. In affirming the issuance of a five-year injunction against Lemelson, this Court also noted Lemelson's statement to the district court that he "would never regret the things [he] did." JAO209.

Appellants argue that a request for a permanent injunction was unreasonable because it was based upon "three sentences or sentence fragments" by Lemelson that "contained an untruth or material omission." Br. at 18. The fact that fraudulent statements may be short does not show it was unreasonable for the Commission to seek a permanent injunction. Indeed, the jury necessarily found the three statements, however short, to be material misstatements.

### 3. The Commission's request for assessment of a civil penalty was reasonable.

The Commission's original and amended complaints requested an assessment of "appropriate civil monetary penalties" without specifying an amount. Thus, Plaintiffs cannot and do not claim that the complaints were unreasonable in their demands for a penalty.

### B. The Commission's post-verdict remedies requests were reasonable.

Although the Commission's post-verdict remedies request is not a demand, the Commission reasonably sought a permanent injunction against future violations of Section 10(b) and Rule 10b-5; a $656,500 civil penalty against Lemelson; a

$775,000 civil penalty against LCM; $656,500 in joint and several disgorgement against Lemelson and LCM; and prejudgment interest of $208,624.

As described above, seeking a permanent injunction was reasonable even if Appellants were not found liable for all the misconduct the Commission alleged because Appellants were found to have engaged in fraudulent conduct and have shown no remorse.

The Commission's request for a civil penalty was also reasonable. The Exchange Act has a three-tier system of monetary penalties. In that system, "[t]he tier determines the maximum penalty, with the actual amount of the penalty left up to the discretion of the district court." JA0151 (quoting *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005)). For a Tier III penalty, the amount of civil penalty "shall not exceed the greater of (I) $100,000 for a natural **person** or $500,000 for any other **person**, or (II) the gross amount of pecuniary gain to such defendant as a result of the violation." 15 U.S.C. § 78u(d)(3)(B)(iii).[5] Lemelson argued that the court should impose a Tier II penalty and impose less than the $80,000 maximum available under Tier II. JA0154. The Commission requested a Tier III penalty of $656,500 against Lemelson, reflecting Lemelson's pecuniary interests in the $1.3

---

[5] As the district court noted, the statutory amounts are adjusted for inflation. JA0158; *see also* Inflation Adjustments to the Civil Monetary Penalties Administered by the Securities and Exchange Commission (as of Jan. 15, 2022) (cited by district court) (available at https://www.sec.gov/enforce/civil-penalties-inflation-adjustments).

million of profits realized by Amvona Fund from short selling of Ligand during the relevant time period, and a Tier III penalty of $775,000 against LCM, reflecting the maximum amount authorized under the Exchange Act for an entity.  JA0133-34.  The request for a separate penalty reflected LCM's status as an investment adviser that employed compliance and finance consultants with operations extending beyond Lemelson and provided Lemelson with a platform to make the fraudulent misstatements.  JA0134.

While the district court did not agree to impose all of the penalties the Commission requested, the Commission's request was reasonable.  Indeed, the district court imposed a Tier III penalty as the Commission requested.  Imposing a Tier III penalty requires a finding that a "violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2)(C).  JA0152.  Thus, the district court agreed that Appellants' violations "created a significant risk of substantial losses to other persons."  While the district court found that the Commission did not provide sufficient evidence to link changes in Ligand's stock prices to Lemelson's fraudulent statements, the district court imposed a Tier III penalty of $160,000 against Lemelson, the maximum available without proof of the money "he gained as a result of his three false statements." JA0158-0159.  In light of these findings, the Commission acted reasonably in seeking a Tier III penalty, in seeking to

connect Lemelson's fraudulent statements to losses in Ligand's stock price, and in seeking the maximum penalties allowed by statute. The Commission also acted reasonably in seeking separate penalties from Lemelson and LCM since they are separate persons.

The Commission's request for disgorgement of $656,500 (significantly less than the $1.3 million in ill-gotten gains alleged in the Complaint and Amended Complaint) was also reasonable.[6] The Commission based its disgorgement claim, like its request for penalties from Lemelson, on its expert's conclusion that Lemelson and LCM realized illegal gains that were causally connected to Appellants' fraud. While the district court found that the Commission had not sufficiently shown the connection between the fraudulent statements and decreases in Ligand's stock price and declined to impose disgorgement (JA0165), given that Lemelson engaged in conduct that created a significant risk of loss and that losses in Ligand's stock price occurred, as the Commission's expert documented and Appellants admitted, the Commission reasonably requested $656,500 in disgorgement.

---

[6] The figure was calculated by combining $442,000 (representing the 34% interest in Amvona Fund held by Lemelson and his family during the relevant time frame) and Appellants' receipt of an estimated $214,500 in performance fees. JA0133-0134.

Because the Commission reasonably sought disgorgement of $656,500, it was reasonable to also seek comparable penalties.

## III.   Appellants can only seek an award of fees and expenses expended defending against an excess demand.

Appellants' motion for fees requested an award for $1,789.051 in fees and expenses incurred in defending this action.  Dkt. 305 at 2-3.  Section 2412(d)(1)(D) only provides for the award of fees and expenses "related to defending against the excessive demand."  *See Am. Wrecking Corp. v. Sec'y of Labor*, 364 F.3d 321, 328 (D.C. Cir 2004) ("2412(d)(1)(D) only permits recovery of the fees and expenses incurred in defending against the *excessive demand*, not in litigating the entire proceeding.") (emphasis in original).  In the event that this Court determines that the Commission issued a demand at all and are eligible to receive an award despite their willful conduct and bad faith, Appellants would only be entitled to seek an award for fees incurred after the date of the demand and incurred because of the demand.  Appellants have recognized that their request for fees and expenses could well be limited to fees incurred after the Commission filed its post-verdict request for remedies.  Br. at 20.  Appellants have provided no reason to believe that any fees and expenses incurred before the Commission filed its post-verdict request for remedies related to the remedies sought.  Before that time, Appellants were contesting claims that they violated the federal securities laws by making material

misstatements of fact.  Appellants have never asserted that this case would have settled or that the litigation before the Commission's post-verdict briefing would have been any different if the Commission had sought different remedies in its complaints.

Thus, in the event that this Court determines that the Commission issued an excessive demand and Appellants are eligible to receive an award, Appellants' recovery of fees and expenses should be limited to fees incurred after the Commission filed its post-verdict request for remedies.

## IV.    The amicus briefs do not provide any basis for awarding Appellants fees or expenses.

Two groups have filed amicus briefs in this case, but neither brief provides facts or information that is material to Appellants' arguments.

The brief of Advancing American Freedom, Inc. ("AAF") says little about the specific issues before this Court.  *See, e.g.,* AAF Br. at 9 ("This Court should secure the rights of speakers against the taxpayer-funded juggernaut of the administrative state").  Instead, the brief discusses the Commission's creation of the Consolidated Audit Trail (CAT) and issuance of climate related rules.  AAF Br. at 9-12.  The brief concludes by stating that the SEC should "return its focus" to "fighting fraud," ignoring that the Commission sued Lemelson under the anti-fraud

provisions of the Exchange Act and that he was found liable for making three fraudulent misstatements.  AAF Br. at 15.

The brief of the Southern Policy Law Institute ("SPLI") asserts that the Commission's litigation position in this matter was not substantially justified (SPLI Br. at 4-9), an issue that Appellants do not challenge on appeal and that SPLI lacks standing to raise.  In any event, SPLI does not provide any facts or law that would show that the Commission's litigation position was not substantially justified.  In maintaining that Appellants are entitled to fees under the excessive demand provision of the EAJA, SPLI devotes much of its argument to contending that statements in the Amended Complaint relate back to the time of the initial Complaint (SPLI Br. at 10-12), but the Amended Complaint did not change the relief sought in the initial Complaint, so that argument is irrelevant to the issues before the Court.  SLPI also argues that seeking $1.3 million in disgorgement was necessarily excessive because the district court did not order any disgorgement, but SPLI neither addresses any specific facts in this case nor provides any discussion of the terms of the EAJA that adds to Appellants' arguments.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's denial of Appellants' motion seeking an award of attorneys' fees and expenses under the Equal Access to Justice Act.

Respectfully submitted,


JEFFREY B. FINNELL
*Acting General Counsel*


ELIZABETH MCFADDEN
*Deputy General Counsel*


MELINDA HARDY
*Assistant General Counsel*


*/s/ Timothy N. McGarey*
TIMOTHY N. MCGAREY
*Senior Trial Counsel*


Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202.551.5179 (McGarey)
mcgareyt@sec.gov


January 27, 2025

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 6768 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I further certify that the foregoing response complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced, Times New Roman-style, 14-point typeface.

*/s/ Timothy N. McGarey*
TIMOTHY N. MCGAREY

Dated: January 27, 2025

**CERTIFICATE OF SERVICE**

I certify that on January 27, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the First Circuit through the Court's CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Timothy N. McGarey*
TIMOTHY N. MCGAREY

Dated: January 27, 2025